# FIGURE 106

| | | +/- 10 Minutes from 11am NY (4pm London) | +/- 20 Minutes from 11am NY (4pm London) | +/- 30 Minutes from 11am NY (4pm London) |
|---|---|---|---|---|
|  | **USD-SEK: Summary of Outliers** Last Trading Day of Each Month (Jan 2009 - October 2013) | | | |

| Period | Metric | +/- 10 Minutes from 11am NY (4pm London) | +/- 20 Minutes from 11am NY (4pm London) | +/- 30 Minutes from 11am NY (4pm London) |
|---|---|---|---|---|
| Full Period | Total Number of Days | 56 | 56 | 56 |
| | Non-Outlier Days | 32 | 26 | 22 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 12 | 11 | 11 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 11 | 14 | 14 |
| | Number of Outlier Days Comparing Price to Succeeding | 1 | 5 | 9 |
| | Total Number of Outlier Days | 24 | 30 | 34 |
| | Number of Outlier Days as a Portion of All Days | 42.9% | 53.6% | 60.7% |
| 2009 | Total Number of Days | 12 | 12 | 12 |
| | Non-Outlier Days | 3 | 3 | 2 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 4 | 3 | 2 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 5 | 4 | 4 |
| | Number of Outlier Days Comparing Price to Succeeding | 0 | 2 | 4 |
| | Total Number of Outlier Days | 9 | 9 | 10 |
| | Number of Outlier Days as a Portion of All Days | 75.0% | 75.0% | 83.3% |
| 2010 | Total Number of Days | 12 | 12 | 12 |
| | Non-Outlier Days | 5 | 5 | 3 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 3 | 2 | 3 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 3 | 4 | 3 |
| | Number of Outlier Days Comparing Price to Succeeding | 1 | 1 | 3 |
| | Total Number of Outlier Days | 7 | 7 | 9 |
| | Number of Outlier Days as a Portion of All Days | 58.3% | 58.3% | 75.0% |
| 2011 | Total Number of Days | 10 | 10 | 10 |
| | Non-Outlier Days | 8 | 3 | 3 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 1 | 2 | 2 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 1 | 4 | 4 |
| | Number of Outlier Days Comparing Price to Succeeding | 0 | 1 | 1 |
| | Total Number of Outlier Days | 2 | 7 | 7 |
| | Number of Outlier Days as a Portion of All Days | 20.0% | 70.0% | 70.0% |
| 2012 | Total Number of Days | 12 | 12 | 12 |
| | Non-Outlier Days | 7 | 6 | 6 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 4 | 4 | 3 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 1 | 1 | 2 |
| | Number of Outlier Days Comparing Price to Succeeding | 0 | 1 | 1 |
| | Total Number of Outlier Days | 5 | 6 | 6 |
| | Number of Outlier Days as a Portion of All Days | 41.7% | 50.0% | 50.0% |
| 2013 | Total Number of Days | 10 | 10 | 10 |
| | Non-Outlier Days | 9 | 9 | 8 |
| | Number of Outlier Days Comparing Price to Preceding Prices | 0 | 0 | 1 |
| | Number of Outlier Days Comparing Price to Preceding Prices and Succeeding Prices | 1 | 1 | 1 |
| | Number of Outlier Days Comparing Price to Succeeding | 0 | 0 | 0 |
| | Total Number of Outlier Days | 1 | 1 | 2 |
| | Number of Outlier Days as a Portion of All Days | 10.0% | 10.0% | 20.0% |

Data Source: Bloomberg.
Note: Interval of time is defined around 11 a.m. NY time / 4 p.m. London time.

**FIGURE 107**



**FIGURE 108**



**FIGURE 109**



Prices for USD-SEK on June 30, 2010
10am to 12pm NY Time

11am NY Time = 4pm London Time

Exchange Rate

Data Source: Bloomberg.

## CLASS ACTION ALLEGATIONS

83.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and as representatives of the following Class:[2]

> All persons or entities that transacted in Financial Instruments with a price term based in whole or in part on WM/Reuters FX rates during the period of at least January 1, 2003 through the present (the "Class Period"). Excluded from the Class are the Defendants and any parent, subsidiary, affiliate, or agent of any Defendant.

84.   The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that at least thousands of geographically dispersed Class members transacted in WM/Reuters-based financial instruments during the Class Period.

85.   Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the members of the Class sustained damages arising out of Defendants' common course of conduct in violation of law as complained of herein. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

86.   Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are adequate representatives of the Class and have no interests which are adverse to the interests of absent Class members. Plaintiffs have retained counsel competent and experienced in class action litigation, including benchmark rate manipulation and antitrust class action litigation.

---

[2] Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period and the definition of Financial Instruments.

131

87. Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class. These common questions of law and facts include, without limitation:

(a) Whether Defendants and their co-conspirators engaged in an agreement, combination or conspiracy to fix WM/Reuters FX rates;

(b) The identity of the participants in the alleged conspiracy;

(c) Whether Defendants unlawful acts violate Section 1 of the Sherman Act;

(d) Whether Defendants unlawful acts violate Section 2 of the Sherman Act;

(e) Whether Defendants' unlawful conduct caused injury to the business or property of Plaintiffs and the Class;

(f) Whether Defendants were unjustly enriched at the expense of Plaintiffs and members of the Class;

(g) The operative time period and extent of Defendants' foregoing violations; and

(h) Whether such injury or the fact or extent of such artificiality may be established by common, class-wide means, including, for example, by regression analysis, econometric formula, or other economic tests.

88. A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many Class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

89.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

90.     The statute of limitations relating to the claims for relief alleged herein were tolled because of fraudulent concealment involving both active acts of concealment by Defendants and inherently self-concealing conduct. Plaintiffs and the Class had no knowledge of Defendants' unlawful and self-concealing manipulative acts and could not have discovered same by the exercise of due diligence prior to October 4, 2013, the earliest, when the Swiss Financial Market Supervisory Authority, FINMA, publicly announced that it is investigating several Swiss financial institutions and the financial institutions regarding the possible manipulation of the FX market. Plaintiffs thus assert tolling the applicable statute of limitations affecting the rights of the claims of relief asserted by Plaintiffs. Defendants are also equitably estopped from asserting that any otherwise applicable limitations period has run.

91.     Active acts of concealment by Defendants to conceal their violations of law from Plaintiffs and the Class include, among other things, (i) engaging in secret communications in private instant message chat rooms known by the monikers, "The Cartel," "The Dream Team" and/or "The Bandits Club"; and (ii) agreeing among themselves not to publicly discuss or otherwise reveal the nature of the acts and communications in furtherance of the agreements alleged herein. Defendants' unlawful conduct was also inherently self-concealing.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(For Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq.*)

### Against All Defendants

92. Plaintiffs incorporate by reference and re-allege the preceding allegations, as though fully set forth herein.

93. Defendants and their unnamed co-conspirators entered into and engaged in a combination and conspiracy in an unreasonable and unlawful restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq.*

94. During the Class Period, Defendants controlled what WM/Reuters FX rates and the WM/Reuters fix would be and therefore controlled the prices of WM/Reuters-based financial instruments. Defendants competed in these markets.

95. The combination and conspiracy consisted of a continuing agreement, understanding or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants fixed and made artificial WM/Reuters FX rates, the WM/Reuters fix and the prices of WM/Reuters-based financial instruments. Defendants' conspiracy is a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

96. Defendants' conspiracy and resulting impact on WM/Reuters FX rates and WM/Reuters-based financial instruments occurred in or affected U.S. interstate commerce.

97. As a proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have suffered injury to their business or property. Plaintiffs and members of the Class paid artificial and non-competitive prices for WM/Reuters-based financial instruments as a proximate result of Defendants' anticompetitive conduct. Plaintiffs and the other members of the

134

Class were also deprived of the benefits of free and open competition in transacting in WM/Reuters-based financial instruments.

98.     Plaintiffs and members of the Class are each entitled to treble damages for the Defendants' violations of the Sherman Act alleged herein, and a permanent injunction restraining Defendants from engaging in additional anticompetitive conduct.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 2 of the Sherman Act, 15 U.S.C. §2)

### Against All Defendants

99.     Plaintiffs incorporate by reference and re-allege the preceding allegations, as though fully set forth herein.

100.    In violation of Section 2 of the Sherman Act, Defendants monopolized, attempted to monopolize, and/or conspired to monopolize the Relevant Market as defined below.

101.    The Relevant Market is the market for WM/Reuters-based financial instruments.

102.    Defendants had market power to manipulate the WM/Reuters fix. During the Class Period, Defendants dominated the FX market and collectively controlled well over 80% of the FX market.

103.    Defendants have abused their monopoly power. Defendants have agreed with one another to abuse their monopoly power. They have done so in order to anti-competitively manipulate the price of WM/Reuters-based financial instruments.

104.    Defendants' conduct and its resulting impact on the Relevant Market occurred in or affected interstate commerce.

105.    The anticompetitive effects of Defendants' conduct far outweigh any ostensible competitive benefits or justifications.

135

106. Plaintiffs and members of the Class have been injured in their business or property by Defendants' monopolization, attempted monopolization, and/or conspiracy to monopolize the Relevant Market.

107. Defendants' anticompetitive conduct had severe adverse consequences on competition and price discovery. Plaintiffs and other members of the Class who transacted WM/Reuters-based financial instruments during the Class Period were deprived of normal, competitive trading patterns and, instead were subjected to artificially determined prices as a result of Defendants' unlawful and manipulative conduct. As a consequence thereof, Plaintiffs and the Class suffered financial losses and were, therefore, injured in their business or property.

## **THIRD CLAIM FOR RELIEF**

### (For Unjust Enrichment)

### Against All Defendants

108. Plaintiffs incorporate by reference and re-allege the preceding allegations, as though fully set forth herein.

109. Defendants individually, and/or through their subsidiaries or affiliates, are FX dealers, traders and/or market makers involved in profit-based trading, clearing and/or brokering of WM/Reuters-based financial instruments traded by Plaintiffs and members of the Class.

110. Defendants financially benefitted from the unlawful manipulation and restraint of trade. As alleged herein, Defendants intentionally and systematically manipulated WM/Reuters FX rates to artificial levels for the express purpose of obtaining hundreds of millions (if not billions) of dollars in ill-gotten profits financial instruments priced to WM/Reuters FX rates. These instruments were held by Defendants, and thus the prices of such instruments (and thus Defendants' ill-gotten gains) were benefitted by, determined, benchmarked, traded or settled based on Defendants' manipulation of WM/Reuters FX rates.

136

111. These unlawful acts caused Plaintiffs and other members of the Class to suffer injury, lose money and transact in the FX currency market at artificial, manipulated and rigged prices.

112. As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiffs and members of the Class, and the circumstances are such that equity and good conscience require Defendants to make restitution.

113. Each Defendant should pay restitution or its own unjust enrichment to Plaintiffs and members of the Class.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs demand relief as follows:

A. For an order certifying this lawsuit as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and designating Plaintiffs as Class representatives, and their counsel be appointed as Class counsel;

B. For the unlawful conduct alleged herein to be adjudged and decreed to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

C. For the unlawful conduct alleged herein to be adjudged and decreed to be an unlawful restraint of trade in violation of Section 2 of the Sherman Act;

D. For Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the conspiracy alleged in the Complaint;

E. For a judgment awarding Plaintiffs and the Class damages against Defendants for their violations of the federal antitrust laws, in an amount to be trebled in accordance with such laws;

F. For a judgment awarding Plaintiffs and the Class restitution of any and all sums received by the Defendants' unjust enrichment;

G. For an award to Plaintiffs and the Class of their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

H. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury of all issues so triable.

Dated: White Plains, New York
December 31, 2013

LOWEY DANNENBERG COHEN
& HART, P.C.

By: _____
Vincent Briganti
Geoffrey M. Horn
Raymond P. Girnys
One North Broadway
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
rgirnys@lowey.com

Manuel John Dominguez
COHEN MILSTEIN SELLERS
& TOLL, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.: 561-833-6575
jdominguez@cohenmilstein.com

J. Douglas Richards
Michael Eisenkraft
Sharon Robertson
COHEN MILSTEIN SELLERS
& TOLL, PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: 212-838-7797
drichards@cohenmilstein.com
meisenkraft@cohenmilstein.com
robertson@cohenmilstein.com

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
GOLD BENNETT CERA
& SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Tel.: 415-777-2230
Fax: 415-777-5189
scera@gbcslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

139